**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

———————————————

No. 22-11022

———————————————

RODNEY K., SR.,

MARY K.,

MARY K.,
  as guardian ad litem for R.K., Jr.,
  Minor,

STACY STANTON TERRY,

GARRIAN TRE BETTS,

KENNESHA QUINNIE,

COLBY QUINNIE,

JEREMIAH CHATMAN,

LYMAN COLLINS, SR.,

TIFFANIE COLLINS,

LYMAN COLLINS, JR.,

                                                        *Plaintiffs-Appellants,*

*versus*

MOBILE COUNTY BOARD OF EDUCATION,

2                    Opinion of the Court                    22-11022

DOUGLAS HARWELL, JR.,

  In his official and individual capacity,
  District I,

DON STRINGFELLOW,

  In his official and individual capacity -
  District II,

REGINALD CRENSHAW,

  In his official and individual capacity -
  District III,

ROBERT BATTLES,

  In his official and individual capacity -
  District IV,

WILLIAM FOSTER,

  In his official and individual capacity -
  District V,

SUPERINTENDENT MARTHA L. PEEK,

  In her official and individual capacity,

PRINCIPAL LEWIS COPELAND,

  In his official and individual capacity,

COACH BOBBY J. POPE,

  In his official and individual capacity,

COACH ROBERT MILLER,

  In his official and individual capacity,

COACH KELLY EUBANKS

  In his official and individual capacity,

                                        *Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:18-cv-00343-TFM-N
_____

22-11022                Opinion of the Court                3

Before BRANCH, LUCK, Circuit Judges, and BERGER,\* District Judge.

PER CURIAM:

This case arises from a string of physical assaults committed primarily by older players against their younger teammates, as well as others, on an Alabama high school football team, culminating in the serious injury of the freshman quarterback. The question before the Court is whether the school board, principal, and coaches were liable for the injuries caused by the conduct of this handful of student athletes. The district court held they were not. After careful review, and with the benefit of oral argument, we agree.

## I.    Facts

Davidson High School is part of the Mobile County Public School System ("MCPSS"). The football program was led by Fred Riley, head coach and athletic director, from 2004 until his retirement in November 2018. For years under Coach Riley's tenure, there was a culture where older players would gang up on younger players in what some players described as "tradition," "bonding," or a way to "initiate" younger players into the varsity locker room. This case focuses on incidents that occurred between 2016 and 2018, during the final years of Coach Riley's tenure.

Appellants collectively allege that students were hazed by members of the football team and that Appellees ignored the

_____

\* The Honorable Wendy Berger, United States District Judge for the Middle District of Florida, sitting by designation.

ongoing physical attacks.  They base their claims on the following incidents: (1) an April 27, 2018 assault of R. K., Jr. ("R.K."), a freshman football player, that resulted in a broken arm; (2) a March 29, 2018 attack of Jeremiah Chatman, a junior football player; (3) a Spring 2017 attack of freshman Garrian Tre Betts; (4) the Fall 2017 verbal and physical harassment of Lyman Collins, Jr. by Coach Riley; and (5) a 2015 attack of Collins.  The attacks involved, among other things, punching, kicking, slamming victims to the floor, beating with weights, beating with a belt, and stuffing at least one student into a trashcan.  The attack on R.K. was so brutal that he was left with a broken arm.

R.K., Betts, and Chatman were members of the Davidson football team when they were attacked by upperclassmen.  Save for the Fall 2017 incident with Coach Riley, all of the attacks were perpetrated by student athletes, and most occurred inside the locker room in an area not visible from Coach Riley's office. Collins was not on the football team, although, like the others, he was assaulted in the locker room.

The assaults were typically recorded on cell phones, which were later confiscated by the Coaches and the videos were deleted. After the videos were deleted,[1] the Coaches would impose some form of punishment.  When the Coaches witnessed an incident, the students involved were told to stop or "knock it off" and were

---

[1] The videos of R.K. and Chatman were not deleted and were eventually released to the media.

punished accordingly.  Punishment included making the students run laps and do bear crawls during lunch.

An investigation into the football program ensued after a video of the attack on R.K. went viral.  The investigation resulted in the arrest of some of the players[2] and, eventually, the resignation of the principal, coach, and superintendent.  The investigation showed an aggressive culture in the locker room dating back to 2005, where upperclassmen would gang up on younger players.

None of the incidents were ever reported to school officials until after the assault on R.K.  In addition, there were no complaints made under the MCPSS Board's Student Code of Conduct in effect from 2015–2017 and 2017–2019.  Both parents and guardians acknowledged receipt of the Student Code of Conduct when they executed the Online Student Enrollment Information, and each student received a copy at the beginning of the school year.  The Student Code of Conduct prohibits—and prescribes punishment for—assault, acts of physical aggression, bullying, disorderly behavior, reckless endangerment, menacing, and harassment and sets forth how to report such behavior.  These offenses largely overlap with the prohibited conduct listed in Alabama's anti-hazing law.  *See* Ala. Code § 16-1-23 (prohibiting conduct that "recklessly or intentionally endangers the mental or

---

[2] The students responsible for the attacks were arrested for assault and given youthful offender status.  They were suspended for "assault third degree" in violation of the MCPSS Student Code of Conduct and placed in alternative schools.

physical health of any student," including "striking, beating, bruising or maiming; or seriously offering, threatening or attempting to strike, beat, bruise, or maim, or to do or seriously offer, threaten, or attempt to do physical violence").

## II.    Procedural History

Appellants, Rodney K., Sr.; Mary K.; R.K.; Betts; Stacy Stanton Terry; Kennesha Quinnie; Colby Quinnie; Chatman; Lyman Collins, Sr.; Tiffanie Collins; and Collins (collectively, "Appellants" or "Students"), filed an eleven count amended complaint against Appellees, Mobile County Superintendent Martha L. Peek ("Superintendent Peek"), Principal Lewis Copeland ("Principal Copeland"); Board of School Commissioners of Mobile County ("School Board"), and its members Douglas Harwell, Jr., Don Stringfellow, Reginald Crenshaw, Robert Battles, and William Foster ("Individual Board Members"); and Coaches Fred Riley, Bobby J. Pope, Robert Miller, and Kelly Eubanks ("Coaches"), alleging various federal and state claims related to hazing by the football team at Davidson High School.

In two separate orders, the district court granted Appellees' motions for summary judgment and thereafter, entered judgment in their favor. Specifically, the district court determined that Appellees were entitled to qualified immunity because Appellants failed to show they violated Appellant's Fourth or Fourteenth Amendment rights. The trial court further found that Appellants failed to show that Individual Board Members, Superintendent Peek, and Principal Copeland were on notice that their failure to

promulgate policy to address hazing or their acquiescence in the hazing was a violation of Appellants' constitutional rights. The district court addressed both the Fourth and Fourteenth Amendments, finding no violations occurred. Finally, the district court found that Appellees were entitled to immunity on the State claims.

This appeal followed.

## III.　Discussion

Appellants seek review of the orders of the district court granting summary judgment in favor of Appellees. They argue the district court erred in three significant ways: first, when it found Coaches were entitled to qualified immunity on Appellants' claims that Coaches violated Students' Fourth and Fourteenth Amendment rights; second, when it found that the School Board, Principal Copeland, and Superintendent Peek did not violate Students' Fourth and Fourteenth Amendment Rights; and third, when the district court found that Appellees were entitled to state-agent immunity. Finding no error, we affirm.

We review the grant or denial of summary judgment de novo. In doing so, we view "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Hill ex rel. BHJ v. Cundiff*, 797 F.3d 948, 967 (11th Cir. 2015). "Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Hallmark Devs., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1283 (11th Cir. 2006)). "A public official's entitlement to qualified

immunity presents a purely legal question, subject to *de novo* review." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 596 (11th Cir. 1997) (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

### A.   Federal Claims against the Coach Defendants

We begin our analysis with the first of Appellant's claims. At the outset, Appellants collectively argue that the district court committed reversible error when it failed to consider both prongs of their burden under the qualified immunity test; specifically, whether Appellees violated Students' constitutional rights. Because it was unnecessary for the district court to analyze whether Students' constitutional rights were violated once it found they failed to demonstrate a clearly established right, we find no error. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"Qualified immunity protects government officials performing discretionary functions from civil liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Johnson v. Mia. Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021) (citations omitted). "To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (quotation omitted). Discretionary authority includes "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Hinson v. Bias*, 927 F.3d

1103, 1116 (11th Cir. 2019) (quotation omitted).  Here, there is no dispute that Appellees acted within the scope of their discretionary authority.   Thus, the burden was on Appellants at summary judgment to establish that qualified immunity was not proper. *Charles*, 18 F.4th at 698 ("Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." (quotation omitted)).

To meet their burden, plaintiffs must show (1) that the defendant "violated a constitutional right" and "(2) that this right was clearly established at the time of the alleged violation." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1181 (11th Cir. 2020) (quotation omitted).   Because the Plaintiff "must satisfy *both*" elements to survive a qualified-immunity defense, *Hinson*, 927 F.3d at 1116 (emphasis added), lower courts have the discretion to apply the test in the order that best serves judicial economy, *Pearson*, 555 U.S. at 242 ("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decision making that will best facilitate the fair and efficient disposition of each case.").   In other words, the court is "afforded the flexibility to determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all." *Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013); *see also Wade v. McDade*, 67 F.4th 1363, 1370 (11th Cir. 2023), *vacated on other grounds* 106 F.4th 1251 (11th Cir. 2024).   Accordingly, although it is often beneficial to analyze the two requirements sequentially, *see King v. Pridmore*, 961 F.3d 1135, 1142

(11th Cir. 2020), the trial court did not err when it stopped its qualified immunity analysis with its finding that Appellants failed to prove a clearly established right.  Nevertheless, we consider the constitutional claims.

### i. Fourth Amendment

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  "[A] seizure occurs only when there is a governmental termination of freedom of movement *through means intentionally applied*."  *Vaughn v. Cox*, 343 F.3d 1323, 1328 (11th Cir. 2003) (quotation omitted); *cf. New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985) (declaring that, in the school setting, the scrutiny applied to certain seizures is less demanding).

There is no dispute that Students were seized when they were attacked by other students.  The question is whether those seizures are attributable to a government actor.

Appellants' Fourth Amendment claim is brought under § 1983, which provides that any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any [s]tate . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights . . . secured by the Constitution" then "shall be liable to the party injured."  42 U.S.C. § 1983.  Thus, to succeed on a § 1983 claim, plaintiffs must establish that their rights were deprived "under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

Generally speaking, "private conduct, no matter how discriminatory or wrongful" is not committed under color of state law. *Id.* at 50 (quotation omitted). Here, all the acts complained about, except one, were committed by non-state actors, namely, by students against other students. Thus, the Fourth Amendment claim against Coaches should fail. There are, however, exceptions to this rule. Private entities may be considered state actors under the following circumstances:

> (1) the [s]tate has coerced or at least significantly encouraged the action alleged to violate the Constitution ("[s]tate compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the [s]tate ("public function test"); or (3) the [s]tate had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

*Charles*, 18 F.4th at 694 (quotation omitted). But simply approving of or acquiescing to the conduct of a private party is insufficient to hold a state actor responsible for that conduct. *See Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th Cir. 2003).

Of the three, the state compulsion test is the one most implicated by the facts in this case. In other words, did the Appellants produce evidence that Coaches "significantly encouraged" the older football players to commit the assaults? The District Court concluded Appellants had, at most, shown

"inaction" by Coaches in preventing the assaults, which did not rise to the level of coercion or significant encouragement. We agree.

Appellants maintain Coaches created an atmosphere that directed and encouraged the students to beat up the other students. And while they admit no evidence exists to suggest Coaches ever "expressly and/or affirmatively directed their players to engage in assaults," they insist Coaches directed the players by intentionally refusing to "intercede and stop their senior players from assaulting the younger players." However, the evidence belies this assertion. To be clear, there is no evidence in the record to suggest Coaches directed or significantly encouraged any group of students to beat up or otherwise haze other students. While Coaches may have been aware it was going on and turned a blind eye, the evidence shows that they warned against it and, when they witnessed the behavior, discouraged it and punished the participants for engaging in it.

Still, Appellants contend there was a direct causal connection linking Coaches to the hazing. Citing *Zatler v. Wainwright*, they argue Coaches were personally involved in the attacks or established a policy and custom that allowed for the assaults. 802 F.2d 397, 401 (11th Cir. 1986) ("A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional" violation or the official may be liable based on "a policy or custom that he established[.]"). Even assuming Appellants can circumvent the state compulsion test by arguing a causal connection, no evidence

suggests Coaches were directly involved in the assaults, and Coaches' failure to respond robustly enough does not constitute a coach sanctioned policy, pattern, and practice of hazing.  As stated earlier, much of the record shows Coaches had a policy and custom of punishing—not encouraging—the players for engaging in hazing-type conduct.  For these reasons, we find no Fourth Amendment violation with respect to the instances of peer-to-peer contact.

Likewise, we find no Fourth Amendment violation based on the "belly bump" of Collins by Coach Riley, which is the only incident involving direct contact by a state actor.  Collins sued Coach Riley because he bumped into him with his belly as Collins was leaving the fieldhouse to attend tutoring.  Collins recalled that after telling Coach Riley he was going to tutoring, Coach Riley looked at him aggressively, poked his stomach out, and started walking into him in a bumping manner.  When this happened, Collins asked Coach Riley what he was doing, took a few steps back, walked around him, and out the door.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  Physically touching a person might indicate a seizure under certain circumstances. *Id.*  However, not all physical contact between a government employee and a member of the public constitutes a Fourth Amendment seizure.  *See Torres v.*

14                    Opinion of the Court                    22-11022

*Madrid*, 592 U.S. 306, 317 (2021).  "A seizure requires the use of force *with the intent to restrain*." *Id.*

Though the record is unclear whether Coach Riley actually made contact with Collins when he walked toward him, for the purpose of our analysis and considering the evidence in the light most favorable to Collins, we presume he did.  However, there is no objective evidence, other than being red-faced, that Coach Riley touched Collins with the intent to restrain him.  No words were ever spoken by Coach Riley and Collins stepped aside immediately and walked out the door without incident.  Having determined there was no Fourth Amendment violation by Coaches, we next consider Appellants' due process claims.

### ii.  Fourteenth Amendment

"The substantive component of the Fourteenth Amendment's Due Process Clause 'prevent[s] government [officials] from abusing [their] power, or employing it as an instrument of oppression.'" *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992)).  Yet, "[n]othing in the language of the Due Process Clause itself requires the [s]tate to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the [s]tate's power to act, not as a guarantee of certain minimal levels of safety and security." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir.

2003) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).

Indeed, "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id.* (citing *Collins*, 503 U.S. at 128). A showing of negligence is insufficient to support a constitutional due process claim, and intentional wrongs are often not enough to violate the Due Process Clause. *Id.* "[E]ven conduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also 'shocks the conscience.'" *Id.* (quoting *Dacosta*, 304 F.3d at 1048). Stated otherwise, "[s]ubstantive due process doctrine is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the [s]tates.'" *Dacosta*, 304 F.3d at 1048 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

"[I]n determining whether a student-plaintiff's allegations of excessive corporal punishment rise to the level of arbitrary and conscience-shocking behavior. . . . at a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1075 (11th Cir. 2000). Neither element is satisfied here. Unlike the coach in *Neal*, who punished a student for fighting by hitting the student with a metal weight lock

16                    Opinion of the Court                    22-11022

and knocking the student's eye out of its socket, *id*. at 1071, and the principal in *Kirkland ex rel. Jones v. Green County Board of Education*, 347 F.3d 903, 904 (11th Cir. 2003), who struck a student with a metal cane in the head, ribs, and back for disciplinary reasons, none of the coaches in this case were personally involved in the assaults.[3]

Again, the undisputed evidence establishes that Coaches did not directly participate in the hazing, and there is nothing beyond speculation that Coaches ordered the older students to haze the newer and younger football players. At most, Coaches knew about the incidents and did nothing. While this conduct may constitute deliberate indifference, "[t]his Court has held deliberate indifference is not, without more, a basis for finding substantive due process liability in cases arising in the school context." *Hill*, 797 F.3d at 980. Accordingly, Appellants have failed to demonstrate a Fourteenth Amendment violation.

### iii.   Clearly Established Right

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (quoting *Pearson*, 555 U.S. at 231). It "embodies an objective reasonableness standard, giving a

---

[3] Even assuming that Coach Riley made contact with Collins during their interaction, merely bumping into Collins with his stomach poked out does not "shock[] the conscience." *Waddell*, 329 F.3d at 1305 (quotation omitted).

government agent the benefit of the doubt, provided that the conduct was not so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed the acts." *Crosby v. Paulk*, 187 F.3d 1339, 1344 (11th Cir. 1999) (quotation omitted). "The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)).

"A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right[4]; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Maddox*, 727 F.3d at 1121 (quotation omitted). "Notwithstanding the availability of these three independent showings . . . if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects

---

4 Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *See Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

the defendant." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) (quotation omitted).

Appellants argue that they have a clearly established right to be free from excessive corporal punishment and free from violations of their rights to bodily integrity. Specifically, they argue that Coaches' hazing practices constituted excessive corporal punishment. In response, Coaches argue that there is no law clearly establishing that a Fourth or Fourteenth Amendment violation occurs through a school official's alleged ratification, endorsement, or encouragement of an alleged seizure or corporal punishment by one student of another student. We agree.

Appellants have not directed this Court to any case law with indistinguishable facts and concede that their only route to showing the law is clearly established is through the second and third methods. "The second and third methods are known as 'obvious clarity' cases." *King*, 961 F.3d at 1146 (quotation omitted). Such cases "are rare and don't arise often." *Id.* (describing obvious clarity cases as a "narrow exception"). Obvious clarity cases "exist where the words of the federal statute or constitutional provision at issue are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful, or where the case law that does exist is so clear and broad (and not tied to particularized facts) that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.*

(quoting *Gaines v. Wardynski*, 871 F.3d 1203,1209 (11th Cir. 2017)). This is not one of those cases.

As a broad principle, Appellants assert that the Fourth Amendment fully protects students who are assaulted and subjected to bodily harm while on campus when the assault or bodily harm is perpetrated, directed, and intentionally condoned by a state employed teacher or administrator. However, the principle that the Fourth Amendment applies to public schools is far too general and not nearly well-enough defined to allow every reasonable school coach in Coaches' situation to know what conduct was unlawful. *See Tahlequah v. Bond*, 595 U.S. 9, 12 ("[T]he rule's contours must be so well defined that it is clear to a reasonable [actor] that his conduct was unlawful in the situation he confronted." (quotation omitted)).

While minors have a clearly established right to be free from excessive punishment as set forth in *Neal* and *Kirkland*, and while in certain circumstances student plaintiffs alleging excessive corporal punishment may be able to assert a substantive due process violation under the Fourteenth Amendment, *see Neal*, 229 F.3d at 1074, there is no case law or broad statement of principle that such right extends to excessive corporal punishment inflicted by another student that was peripherally witnessed by, but not ordered by, the state actor. Here, there is no evidence that any of Coaches inflicted excessive corporal punishment onto Students or seized Students as contemplated by the Fourth Amendment. Rather, save for the "belly bump" attributed to Coach Riley, the assaults were

perpetrated by fellow students.  Thus, based on the facts of this case, a reasonable person would not have believed he violated Students' rights under the federal constitution.  And the conduct was not so egregious that a constitutional right was clearly violated.  Thus, the district court did not err when it determined Appellants failed to present evidence that Coaches violated a clearly established right.

### B.  Federal Claims against the School Board, Principal, and Superintendent

Next, we address Appellants' Fourth and Fourteenth Amendment claims against the School Board, Principal Copeland, and Superintendent Peek.  Because these claims are based on theories of supervisory liability or municipal liability, *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S.658 (1978), and Appellants failed to establish Coaches violated Students' rights under the Fourth or Fourteenth Amendments, the claims against the School Board, Principal Copeland, and Superintendent Peek fail as well. *See, e.g.*, *Baker v. Madison*, 67 F.4th 1268, 1282 (11th Cir. 2023) ("[B]ecause there was no underlying constitutional violation, [plaintiff]'s municipal liability claim against the [c]ity fails as a matter of law."); *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005) ("Because we conclude that Plaintiff's constitutional rights were not violated by the search, Plaintiff cannot maintain a § 1983 action for supervisory liability[.]"); *Young v. Augusta ex rel. DeVaney*, 59 F.3d 1160, 1169 (11th Cir. 1995) ("[F]or § 1983 municipal liability to attach, there must first be established an underlying violation of a

federal right[.]" (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816–17 & n.4 (1985))).

Even if we were to find an underlying constitutional violation, school boards cannot be held vicariously liable under § 1983 for constitutional violations committed by their employees. *Denno v Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000). Rather, they may be held liable only if such constitutional violations "result from an official government policy." *Id.* Because most school boards "rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the [school board] has a custom or practice of permitting it and that the [board]'s custom or practice is the moving force behind the constitutional violation." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (quotation and alterations omitted). Here, there is no evidence that the School Board had a custom or practice of permitting hazing in the form of student-on-student assaults. It did, however, have a Student Code of Conduct in effect at the time that explicitly prohibited assault, bullying, and harassment and set forth how to report such behavior. Yet no such behavior was ever reported. In fact, Appellants never alleged, and there is no evidence to suggest, that the School Board had any indication there was violence in Davidson's football program prior to when the video of R.K. was picked up by the media.

### C.  State Agent Immunity

"Alabama's '[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities.'" *T.R. ex rel. Brock v. Lamar Cnty. Bd. of Educ.*, 25 F.4th 877, 888 (11th Cir. 2022) (quoting *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002)).  The state agent must first prove "that the plaintiff's claims arise from a function that would entitle the [s]tate agent to immunity." *Ex parte Est. of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006).  If the defendant demonstrates he qualifies for state-agent immunity, "the burden then shifts to the plaintiff to show that one of the two exceptions to [s]tate-agent immunity is applicable." *T.R.*, 25 F.4th at 888 (quoting *Ex parte Brown*, 182 So. 3d 495, 503 (Ala. 2015)).  "Under Alabama law, the defendant is not entitled to [s]tate-agent immunity if the plaintiff shows that the defendant 'acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.'" *Id.* (quoting *Grider v. Auburn*, 618 F.3d 1240, 1255 (11th Cir. 2010)).  Alabama's Sovereign Immunity statute, Ala. Code § 36-1-12, specifically states:

> (d) Notwithstanding subsection (c), an education employee, officer, employee, or agent of the state is not immune from civil liability in his or her personal capacity if:

> (1) The Constitution or laws of the United States, or the Constitution of this state, or laws, rules, or regulations of this state enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) The education employee, officer, employee, or agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

(e) This section shall not be construed to eliminate, alter, or otherwise modify any other immunity regarding officers, employees, or agents of the state established under the Constitution and laws of this state.

In addition to state-agency immunity, Alabama Code section 16-1-24.1(g), sets forth that "[e]xcept in the case of excessive force or cruel and unusual punishment, no certified or noncertified employee of the State Board of Education or any local board of education shall be civilly liable for any action carried out in conformity with state law and system or school rules regarding the control, discipline, suspension, and expulsion of students." *See also Ex parte Nall*, 879 So. 2d 541, 544 (Ala. 2003) ("State agents are afforded immunity from civil liability when the conduct made the basis of the claim is based on the exercise of judgment in supervising and educating students."), *as modified on denial of reh'g* (Oct. 24, 2003). Accordingly, the burden was properly shifted to Appellants to prove that Coaches "acted willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority." *See* Ala. Code § 36-1-12(d)(2).

Appellants argue that the district court erred when it found that Coaches were entitled to state agent immunity because they presented evidence that Coaches violated the Fourth and

24                    Opinion of the Court                    22-11022

Fourteenth Amendments and Alabama Code section 16-1-23. They further argue there is evidence that Coaches' conduct was "willful, malicious, and in bad faith."

Since Appellants' federal constitutional claims fail, we need only consider whether Defendants' alleged violation of Alabama's criminal statute proscribing hazing defeats any claim to state-agent immunity. Section 16-1-23 of the Alabama Code provides:

> (a)     Hazing is defined as follows:
>
> (1)     Any willful action taken or situation created, whether on or off any school, college, university, or other educational premises, which recklessly or intentionally endangers the mental or physical health of any student, or
>
> (2)     Any willful act on or off any school, college, university, or other educational premises by any person alone or acting with others in striking, beating, bruising, or maiming; or seriously offering, threatening, or attempting to strike, beat, bruise, or maim, or to do or seriously offer, threaten, or attempt to do physical violence to any student of any such educational institution or any assault upon any such students made for the purpose of committing any of the acts, or producing any of the results to such student as defined in this section.
>
> (3)     The term hazing as defined in this section does not include customary athletic events or similar

contests or competitions, and is limited to those actions taken and situations created in connection with initiation into or affiliation with any organization. The term hazing does not include corporal punishment administered by officials or employees of public schools when in accordance with policies adopted by local boards of education.

(b)    No person shall engage in what is commonly known and recognized as hazing, or encourage, aid, or assist any other person thus offending.

(c)    No person shall knowingly permit, encourage, aid, or assist any person in committing the offense of hazing, or willfully acquiesce in the commission of such offense, or fail to report promptly his knowledge or any reasonable information within his knowledge of the presence and practice of hazing in this state to the chief executive officer of the appropriate school, college, university, or other educational institution in this state. Any act of omission or commission shall be deemed hazing under the provisions of this section.

(d)    Any person who shall commit the offense of hazing shall be guilty of a Class C misdemeanor as defined by Title 13A.

(e)    Any person who participates in the hazing of another, or any organization associated with a school, college, university, or other educational institution in this state which knowingly permits hazing to be

conducted by its members or by others subject to its direction or control, shall forfeit any entitlement to public funds, scholarships, or awards which are enjoyed by him or by it and shall be deprived of any sanction or approval granted by the school, college, university, or other educational institution.

(f)      Nothing in this section shall be construed as in any manner affecting or repealing any law of this state respecting homicide, or murder, manslaughter, assault with intent to murder, or aggravated assault.

Alabama's anti-hazing statute is a criminal statute that does not proscribe civil liability for a violation.  As such, Appellants cannot use it to defeat state-agent immunity.  *See* Ala. Code § 36-1-12(d)(1).  Instead, Appellants must rely on the section 36-1-12(d)(2) exception for conduct that is willful, malicious, in bad faith, or beyond their authority.

To show that Coaches acted beyond their authority, Appellants must show they failed to discharge their duties pursuant to detailed rules.  *See T.R.*, 25 F.4th at ("[T]he determinative consideration is whether the State agent failed to discharge duties pursuant to *detailed* rules and regulations." (quotation omitted)). The Alabama Supreme Court likens the level of detail required to "those stated on a checklist." *Ex parte Wilcox Cnty. Bd. of Educ.*, 374 So. 3d 641, 647 (Ala. 2022) (quotation omitted).  The level of particularity must remove the exercise of judgment.  *Odom v. Helms*, 314 So. 3d 220, 228 (Ala. 2020).  Here, the district court

correctly determined that Alabama Code section 16-1-23 is not sufficiently detailed to show Coaches acted beyond their authority. In the context of this case, whether a particular student's conduct is tantamount to hazing requires a judgment call. To be clear, fights and physical altercations are not uncommon occurrences in the high school setting, and the statute leaves to the discretion of the witnessing party the need to assess all relevant information in the situation and determine if any instances of "striking, beating, bruising, or maiming; or seriously offering, threatening, or attempting to strike, beat, bruise, or maim, or to do or seriously offer, threaten, or attempt to do physical violence" amount to hazing or are simply a disagreement between the parties. Not every instance of striking between an upperclassman and younger student is going to be an instance of hazing and section 16-1-23 far from removes the exercise of judgment in determining the nature of the conduct and does not provide a "checklist" for a witness to simply complete and determine that any particular conduct constitutes hazing.

Moreover, even if the statute was sufficiently detailed, the violation of the statute requires a showing of willfulness. "'Willfulness' is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury." *Ex parte Nall*, 879 So. 2d at 546 (quotation omitted). Appellants have not shown that Coaches acted willfully. And while Appellants present evidence that Coaches were either ignorant of or misinterpreted hazing as defined in the statute, "[n]ot every innocent misinterpretation of

the law revokes an official's state-agent immunity under Alabama law." *Hill*, 797 F.3d at 981. "If nothing more were required than an innocent misinterpretation of the law, 'that exception would swallow the whole of the general rule of immunity itself' because 'any misstep by any state employee or other state agent that wrongs another can be said to be beyond his or her authority and/or committed under a mistaken interpretation of the law.'" *Id.* at 981–82 (quoting *Segrest v. Lewis*, 907 So. 2d 452, 456 (Ala. Civ. App. 2005)). Accordingly, "the misinterpretation of the law must be coupled with willfulness, maliciousness, or bad faith to 'pull the agent out from under the umbrella of state-agent immunity.'" *Id.* at 982 (quoting *Segrest*, 907 So. 2d at 456).

"[M]alice is defined as '[t]he intent, without justification or excuse, to commit a wrongful act . . . .'" *Ex parte Montgomery*, 272 So. 3d 155, 168 n.5 (Ala. 2018) (quoting *Ex parte Nall*, 879 So. 2d at 546). "Bad faith . . . requires more than a showing of incompetence" and "is not simply bad judgment or negligence." *Hill*, 797 F.3d at 981 (quotation omitted). Rather, "[i]t imports a dishonest purpose and means a breach of known duty . . . through some motive of self-interest or ill will." *Id.* (quoting *Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981)). Stated differently, a showing of "maliciousness" or "bad faith" also requires a "volitional culpability or scienter on the part of the employee." *Ex parte Ingram*, 229 So. 3d 220, 236 (Ala. 2017) (Murdock, J., concurring) ("By definition, an employee cannot act willfully, maliciously, . . . or in bad faith without knowing that he or she is doing so.").

Under these circumstances, Appellants have failed to prove that Coaches' alleged omissions were malicious or conducted in bad faith. Instead, Appellants have only demonstrated, at most, that Coaches were incompetent and acted with bad judgment. There was no plan or intent to injure Students. To the contrary, the evidence shows that Coaches consistently tried to stop the assaults when they witnessed them and imposed punishment on those involved in them. Accordingly, no exception applies, and Coaches were entitled to state-agent immunity. The district court did not err.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**